# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. WHITE, 13888-084, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 19-cv-00418-JPG |
| WILLIAM TRUE and | ) |
| UNITED STATES OF AMERICA, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on a Motion to Dismiss filed by Defendants William True and United States of America. (Doc. 12). Defendants seek dismissal of the Amended Complaint (Doc. 5) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (*Id.*). For the reasons set forth below, Defendants' Motion to Dismiss shall be **GRANTED** and this case **DISMISSED with prejudice**.

### PROCEDURAL HISTORY

In April 2019, Plaintiff William White, an inmate housed in the Communications Management Unit ("CMU")[1] at the United States Penitentiary in Marion, Illinois ("USP-Marion"), filed this action for deprivations of his constitutional rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq*. (Doc. 1). In May 2019, he was granted leave to file an Amended Complaint (Doc. 5) adding a claim under the Federal Tort Claims Acts ("FTCA"), 28 U.S.C. § 1346, *et seq*., and/or Illinois state law. (Docs. 4 and 5). In the Amended Complaint (Doc. 5), Plaintiff claims he was wrongfully

---

[1] Inmates housed in the CMU are subject to additional staff oversight of communications between CMU inmates and persons in the community. 28 C.F.R. § 540.200(c).

1

prevented from corresponding with his daughter ("B.L.W.") at the United States Penitentiary in Marion, Illinois ("USP-Marion"). (Doc. 5, p. 20). Plaintiff was previously prosecuted for sending threatening and extortionate communications to his estranged spouse in *United States v. White*, No. 7:13CR00013, 2017 WL 2378018, at *1 (W.D. Va. May 31, 2017), *aff'd*, 708 F. App'x 130 (4th Cir. 2018). (*See* Doc. 5 at ¶ 12). In several of these communications, Plaintiff also mentioned his daughter, B.L.W. *See United States v. White*, 810 F.3d 212, 217-18 (4th Cir. 2016). He nevertheless maintained written contact with her from prison.

Problems with Plaintiff's correspondence to B.L.W. arose soon after she relocated with her mother on August 1, 2018. (*Id*. at p. 20). When Plaintiff attempted to add her new postal mail address as an authorized contact into the TRULINCS[2] system used to generate computer mail labels at USP-Marion on August 6, 2018, he received notification that his new contact request was rejected. (*Id*.). Plaintiff made two additional attempts to add the information into TRULINCS in August and September 2018, but these requests were also denied. (*Id*.). A prison intelligence officer informed Plaintiff that Warden True personally denied the requests and barred all future communication with B.L.W. in order to terminate Plaintiff's relationship with her.[3] (*Id*.).

After learning this, Plaintiff initiated an internal appeal of the decision on October 11, 2018. (*Id*. at p. 21). On October 12, 2018, the same intelligence officer told Plaintiff that he was also prohibited from communicating with B.L.W. through his own mother. (*Id*.). On November 3, 2018, B.L.W.'s mother told Plaintiff's mother that she sent a written request to the BOP for restoration of contact between Plaintiff and B.L.W. (*Id*.).

---

[2] Per BOP Program Statement 4500.11, Chapter 14.10(c), TRULINCS is the "Trust Fund Limited Inmate Computer System" used to print postal mailing labels. https://www.bop.gov/policy/progstat/4500_011.pdf (site last visited March 20, 2020).
[3] On November 5, 2018, Gary Burgess informed Plaintiff that Warden True took no action to interfere with Plaintiff's communication, but Plaintiff states that he did not believe this. (*Id*. at p. 21).

On April 9, 2019, Plaintiff learned that the BOP's Central Office took final agency action denying his appeal and his request for communication with B.L.W. (*Id.* at p. 21). The same day, he prepared the underlying Complaint, asserting claims for relief against Warden True pursuant to *Bivens* and the APA.[4] (Doc. 1, p. 26; Doc. 5, p. 21). When the BOP denied his internal tort claim regarding communications with his daughter in a "right to sue" letter dated April 18, 2019, Plaintiff amended his Complaint to add a claim for loss of companionship of his daughter under the FTCA on April 26, 2019.[5] (Doc. 5, pp. 16, 27).

Following preliminary review of the Amended Complaint (Doc. 5) under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed with two claims:[6]

**Count 3:** Defendant True violated the Administrative Procedures Act by barring communication between Plaintiff and his daughter without taking the appropriate procedural steps.

**Count 4:** Defendant True and the United States caused Plaintiff to lose the companionship of his daughter.

(*See* Doc. 6).

In lieu of an Answer to the Amended Complaint, Defendants filed a Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) on August 20, 2019. (Doc. 12). In connection with Count 3, Defendants argue that the BOP's decision to restrict communication between Plaintiff and his daughter is not reviewable under the APA, but the decision withstands scrutiny even if it is. (*Id.* at pp. 6-12). With regard to Count 4, Defendants seek dismissal of the FTCA claim against Warden True because the United States is the only proper defendant. (*Id.*). Defendants further argue that Plaintiff's claim is exempt from the waiver of sovereign immunity under the FTCA and

---

[4] The Court received the Complaint and opened this case on April 15, 2019. (Doc. 1).
[5] The Court received the Amended Complaint and filed it in CM/ECF on May 7, 2019. (Doc. 5).
[6] Two other claims brought pursuant to *Bivens*—a First Amendment mail interference claim (Count 1) and Fifth Amendment due process claim (Count 2)—were dismissed with prejudice at screening. (Doc. 6, pp. 4-7) (citing *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017)).

is not cognizable under Illinois state law. (*Id*.). Plaintiff filed a *pro se* Response to the Motion to Dismiss on August 29, 2019. (Doc. 13).

**LEGAL STANDARD**

The purpose of a motion to dismiss filed under Rule 12(b)(6) is to decide the adequacy of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(6) motion, the complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Plaintiff need not plead detailed factual allegations, but he or she must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

**ANALYSIS**

**A.     *Count 3***

The APA provides parties who are adversely impacted by agency action with a means of seeking judicial review of the action, *except* when the decision is committed to agency discretion by law or another federal statute specifically precludes review. 5 U.S.C. §§ 701(a), 702. There is a strong presumption that agency action is reviewable. *Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645, 1651 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies" and so there is a "strong presumption favoring judicial review of administrative action." (citation omitted)). Under the APA, the Federal Bureau of Prisons ("BOP") is considered

an "agency." 5 U.S.C. § 701(b)(1) (an agency is "each authority of the Government of the United States"). Thus, the BOP's actions are presumptively amenable to APA review.

As noted above, there is a "very narrow" exception to the presumption of reviewability for: (1) agency actions committed to agency discretion by law; and (2) when statutes preclude judicial review because they "are drawn in such broad terms that . . . there is no law to apply." *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation marks and citations omitted); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). *See also* 5 U.S.C. §§ 701(a)(1), (2). Agency actions are unreviewable in these situations "because 'the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion.'" *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)).

The BOP has broad authority and discretion over the management and regulation of all penal and correctional institutions under 18 U.S.C. § 4042(a) (charging BOP with the "management and regulation of all Federal penal and correctional institutions"). Pursuant to this broad grant of authority, the BOP creates rules to manage federal prisons. These guidelines commonly take the form of Program Statements and Institutional Supplements. However, they are not subject to the APA's rulemaking requirements. 5 U.S.C. § 553(b)(3)(A); *Reno v. Koray*, 515 U.S. 50, 61 (1995) (describing Program Statements as "internal agency guideline[s]" not subject to the "rigors of the Administrative Procedur[e] Act"). They are neither laws nor regulations, but rather internal agency guidelines "akin to . . . interpretative rules." *Id*. As a result, they do not create entitlements that are enforceable under the APA. *Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011) (citations omitted).

The agency action at issue here is the decision to limit Plaintiff's correspondence with his daughter. (Doc. 6, p. 3). Such decisions are governed by BOP Program Statement 5265.14 and 28 C.F.R. § 540.14(d), which grant prison wardens broad discretion to restrict inmate correspondence: "**The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.**" *See* Program Statement 5265.14, § 540.14(d) (emphasis added). The authority to restrict an inmate's outgoing mail is committed to agency discretion by law and is not reviewable under the APA. 5 U.S.C. § 701(a)(2). For this reason, the Court finds that the decision to restrict Plaintiff's mail communication with B.L.W. is not amenable to APA review.

Even if it is reviewable, however, the decision withstands APA scrutiny. Relief under the APA is only available when agency action is:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedures required by law;

(E) unsupported by substantial evidence in a case subject to 5 U.S.C. §§ 556, 557 or this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2). The APA provides Plaintiff with no relief.

Plaintiff challenges the restriction on his outgoing correspondence with B.L.W. as unconstitutional and in violation of the First Amendment.[7] *See* 5 U.S.C. § 706(2)(B). Restrictions on an inmate's outgoing correspondence are governed by the standard espoused in *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).[8] The *Martinez* analysis consists of two prongs: (1) the regulation or practice in question must further an important or substantial government interest unrelated to the suppression of speech; and (2) the challenged action must be no greater than is necessary or essential to the protection of that interest. *Martinez*, 416 U.S. at 413. The restriction at issue is a restriction on Plaintiff's communication—limiting his outgoing, not incoming, communications with his daughter. (*See* Doc. 13, p. 2).

The restriction serves a recognized and substantial governmental interest in "security, order, and rehabilitation." *Martinez*, 416 U.S. at 413. The Court takes judicial notice of the fact that, before the restriction was imposed, Plaintiff was prosecuted for sending threatening communications to his estranged spouse that also mentioned B.L.W. (Doc. 5 at ¶ 12). *See United States v. White*, 2017 WL 2378018, at *1 (W.D. Va. May 31, 2017), *aff'd*, 708 F. App'x 130 (4th Cir. 2018). *See also United States v. White*, 810 F.3d 212, 217-18 (4th Cir. 2016). At the time the restriction was put into place, Plaintiff was housed in the CMU, which provides additional oversight of inmate communications. 28 C.F.R. § 540.200(c). Warden True limited Plaintiff's communication with his daughter because "communications of this nature would be detrimental

---

[7] In his Response, Plaintiff clarifies that his APA challenge does not arise from any restrictions on his communications with his estranged wife, only his daughter. (Doc. 13, p. 2).
[8] Although the Supreme Court overturned this decision *in* part, in *Thornburg v. Abbott*, 490 U.S. 401, 413 (1989), the Court indicated that *Martinez* would continue to provide the standard for claims of censorship of outgoing mail. *See Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006).

to the **safe, secure, and orderly running of the institution** and as such will not be permitted."[9]

(Doc. 5, pp. 14-16; Doc. 12-1, p. 5). The warden's response is consistent with the guidelines set forth in Program Statement 5265.14 and with the substantial governmental interests in safety and security recognized in *Martinez*, 416 U.S. at 413.

The decision was independently examined and upheld at each level of review. (Doc. 12-1, pp. 7, 9). In response to Plaintiff's appeal, the Regional Director explained:

> . . . We have reviewed your appeal and the Warden's response dated November 28, 2018. You were designated to the Communications Management Unit (CMU) to ensure additional monitoring of your communication could be accomplished. This may be the result of current offense behavior *or other verified information*. Those inmates who require heightened monitoring will continue to be designated to the CMU. As indicated in the Warden's response, this contact will not be permitted in order to protect the safety, security, and orderly operation of the institution, and to protect the public. You have provided insufficient evidence to support your claim staff have acted outside the scope of policy. Accordingly, the Warden's decision is supported.

(*Id*. at p. 7). The National Inmate Appeals Director agreed, stating, "The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided. You were advised why the contact in question is not approved and there is no indication this decision violates your rights." (*Id*. at p. 9).

The restriction on Plaintiff's communications with B.L.W. is also narrowly tailored—limiting Plaintiff's outgoing communication with one person—to serve a legitimate penological interest in the order and security of the institution and the public. *See Martinez*, 416 U.S. at 412-13 ("The legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence."). The Court finds that the decision was neither arbitrary nor contrary to a constitutional right.

---

[9] The administrative remedy request was submitted, in part, with Plaintiff's Amended Complaint (Doc. 5, pp. 14-16) and, in whole, with the Defendants' Motion to Dismiss (Doc. 12-1, pp. 4-17).

Based on the foregoing discussion, the Court finds that the decision to restrict Plaintiff's outgoing communications with B.L.W. is not reviewable under the APA. Even if it is, however, the decision withstands APA review. Count 3 shall therefore be dismissed with prejudice.

**B.**     *Count 4*

Defendants seek dismissal of the FTCA claim in Count 4 under Rule 12(b)(6). Pursuant to the FTCA, this Court has jurisdiction of "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added). The FTCA waives the United States' sovereign immunity for claims arising out of torts committed by federal employees. 28 U.S.C. § 1346(b)(1). However, Plaintiff cannot bring his FTCA claim against federal officials or agencies. The "only proper defendant in an FTCA action is the United States." *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). *See* 28 U.S.C. § 2679(b). The FTCA claim in Count 4 cannot proceed against Warden True.

For that matter, Count 4 cannot proceed against either defendant because the allegations fail to state a claim upon which relief may be granted. The FTCA explicitly exempts from its waiver of sovereign immunity "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). Under this exemption, courts have dismissed FTCA claims arising from the loss of personal property mailed by the BOP, *Georgacarakos v. United States*, 420 F.3d 1185, 1188 (10th Cir. 2005), and claims arising from the failure to deliver inmate mail, *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). The United States Supreme Court has also held that Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement

officers." *Ali v. Fed'l Bureau of Prisons*, 552 U.S. 214, 228 (2008). This language would appear to encompass the warden and the BOP. The mail restriction at issue falls within the scope of this exemption.

To the extent Plaintiff maintains that his claim arises from the loss of companionship with his daughter, Count 4 still fails. The FTCA prohibits the recovery of compensatory damages for mental or emotional injuries without any showing of a physical injury. 28 U.S.C. § 1346(b)(2). Section 1346(b)(2) states, "No person convicted of a felony who is incarcerated . . . while serving a sentence may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also* 42 U.S.C. § 1997(e)(e) (limiting recovery for mental or emotional injuries in federal civil actions brought by a prisoner to those with a prior showing of physical injury).

Courts considering an FTCA claim must look beyond federal law—to the tort law of the state where the tortious conduct occurred. *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013). Plaintiff's claim arises from conduct that occurred at USP-Marion in Illinois. Therefore, the Court applies Illinois state law to the claim in Count 4.[10] *Id*. Illinois state law offers no support for Plaintiff's FTCA claim arising from a loss of companionship with his daughter because he cannot recover under Illinois law for a nonfatal injury of this kind. *See, e.g., Holzgrafe v. Hinsdale Bank & Tr. Co.*, 2009 WL 3824651, at *3 (N.D. Ill. Nov. 13, 2009 (same); *Vitro v. Mihelcic*, 209 Ill.2d 76 (2004) (parent may not recover for loss of society and companionship of nonfatally injured child); *Zvunca v. Motor Coach Indus. Int'l Inc.*, 2009 WL 483867, at *7 (N.D. Ill. Feb. 26, 2009) (unless child suffered fatal injury, damages for loss of society for interference with parent-

---

[10] At screening, the Court invoked its supplemental jurisdiction over this claim in error. The FTCA, itself, provides a basis for jurisdiction over the claim. However, as explained herein, the Complaint fails to set forth sufficient allegations to state a claim for relief against the defendants under the FTCA.

child relationship are not recoverable in Illinois); *Doty v. Carey*, 626 F. Supp. 359, 364 (N.D. Ill. 1986) (Illinois tort law allows no right of action for a parent's claim for loss of society independent from wrongful death claim).

Whether construed as an FTCA claim or supplemental claim under Illinois state law for loss of companionship, Count 4 does not survive review under Rule 12(b)(6) against either defendant and shall be dismissed with prejudice against both.

## DISPOSITION

Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 12) is **GRANTED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. **COUNTS 3** and **4** are **DISMISSED** with prejudice against Defendants **TRUE** and **UNITED STATES**. This action is **DISMISSED** with prejudice, and judgment will be entered accordingly.

**DATED: March 23, 2020**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**